# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
# MARTINSBURG

**DENNIS FINBARR MURPHY,**

Plaintiff,

v.  CIVIL ACTION NO.: 3:17-CV-147 (GROH)

**SECRETARY, U.S. DEPARTMENT OF HOMELAND SECURITY, CUSTOMS AND BORDER PROTECTION,**

Defendant.

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Now before the Court is the Defendant's Motion for Summary Judgment [ECF No. 104], filed on December 21, 2018. On January 2, 2019, the Plaintiff filed a response in opposition. ECF No. 108. Following the Court's Order striking the Plaintiff's response, the Plaintiff resubmitted his response in opposition [ECF No. 126] on February 11, 2019. The Defendant filed a reply in support of its motion on February 25, 2019. ECF No. 130. The Plaintiff filed a sur-reply on February 27, 2019. ECF No. 131. Accordingly, the matter has been fully briefed and is now ripe for review. For the following reasons, the Defendant's Motion for Summary Judgment is **GRANTED**.

### I. Background

Dennis Finbarr Murphy ("Plaintiff") brings this action against the Secretary of U.S. Department of Homeland Security, Customs and Border Protection ("Defendant") pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII") and 42 U.S.C. § 1983.

See ECF No. 1. Specifically, in his three-count complaint, the Plaintiff alleges that the Defendant discriminated against him based upon his religion and his wife's national origin and religion when it asked that he be removed from the contract, that his First Amendment right to freedom of religion was violated as a result and that his removal from the contract violated the Establishment Clause of the First Amendment. Id. The following facts are undisputed.[1]

The Plaintiff was employed under a government contract as an armed security guard at the Department of Homeland Security, U.S. Customs and Border Protection's Advanced Training Center ("ATC") in Harpers Ferry, West Virginia. The Plaintiff's employer, Swanson Action Facilities Enterprises ("SAFE"), a joint venture of Action Facilities Management ("AFM"), contracted with Customs and Border Protection ("CBP") to provide armed security guard services at the ATC. The Plaintiff was employed from May of 2013 until September 23, 2014, when he was removed from the contract at the direction of CBP government managers. His removal from the contract ultimately resulted in the termination of his position with SAFE.

The Plaintiff is Roman Catholic and his wife is an Asian Buddhist from Thailand. Plaintiff alleges that he had conversations regarding religious beliefs of himself and his wife with Captain David Wilt, fellow Officer Gregory Voorhees, contract security guards at CBP ATC, and Contracting Officer's Technical Representative ("COTR") Rodger

---

[1] These facts are drawn from the Plaintiff's Complaint [ECF No. 1], the Defendant's Motion for Summary Judgment [ECF No. 104] and the Plaintiff's Opposition to the Defendant's Motion for Summary Judgment [ECF No. 126].

Ausherman who was a CBP employee.[2] Voorhees verbally complained about the Plaintiff harassing him on several occasions. Thereafter, on September 12, 2014, Voorhees submitted a letter to Captain Wilt complaining that Plaintiff created a hostile work environment by talking about his religious beliefs.[3] In his letter, Voorhees listed several examples, including one in mid-August, when the Plaintiff asked Voorhees what his denomination was and Voorhees answered he was Southern Baptist. In response, Voorhees alleges the Plaintiff "placed his hands up, did a short dance, and asked 'are you the ones that dance with snakes?'" ECF No. 104-2 at 33. Voorhees described another incident on August 30, when the Plaintiff was mocking Voorhees' work duties. Voorhees also related a series of events wherein the Plaintiff was observing Voorhees' job duty performance rather than doing his own job.

Alarm Monitor Jadranko Medich also wrote to Captain Wilt corroborating a portion of Voorhees' claims. On September 18, 2014, Captain Wilt presented the written complaints he received to COTR Ausherman. COTR Ausherman contacted Contracting Officer ("CO") Rick Travis about the complaints of Voorhees and Medich. COTR Ausherman also included allegations from Chuck Robell, a Supervisory Security Specialist, that the Plaintiff was rude to him. COTR Ausherman also provided the statements to CO Travis by email.

---

2 COTR Ausherman stated that he was unaware of the Plaintiff's religious affiliation or the Plaintiff's wife's religious affiliation or national origin.

3 The Plaintiff disputes the allegations in Voorhees' letter. The Plaintiff alleges that Voorhees initiated a conversation of a religious nature and made a point of telling the Plaintiff how he was a Christian Minister. ECF No. 1 at 7. Regardless of the truth of the statements in Voorhees' letter, the information was relied upon by COTR Ausherman and CO Travis when determining whether to terminate the Plaintiff's employment on the contract.

Melissa Young, SAFE's Vice President of Business Development and Operations/Compliance Officer, recommended the Plaintiff receive a one-day suspension and a verbal counseling.  Without further investigation, COTR Ausherman and CO Travis decided to remove the Plaintiff from his contract.  COTR Ausherman and CO Travis told Young the Plaintiff needed to be removed from the contract.  Young directed Captain Wilt to advise the Plaintiff of his termination.  On September 23, 2014, in the presence of Sergeant David Peacher, Captain Wilt informed the Plaintiff he would be terminated based upon a hostile work environment complaint or he could submit a resignation letter.  The Plaintiff alleges he was told if he did not resign, he would risk losing his security clearance.  On September 27, 2014, the Plaintiff emailed his resignation letter to Captain Wilt.

## II. Applicable Legal Standards

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  Thus, the Court must conduct "the threshold inquiry of determining whether there is the need for a trial–whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id. at 250.

The party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., 475 U.S. at 586. That is, once the movant has met its burden to show an absence of material fact, the party opposing summary judgment must then come forward with affidavits or other evidence establishing there is indeed a genuine issue for trial. Fed. R. Civ. P. 56; Celotex Corp., 477 U.S. at 323-25; Anderson, 477 U.S. at 248. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249 (citations omitted). A motion for summary judgment should be denied "if the evidence is such that conflicting inferences may be drawn therefrom, or if reasonable men might reach different conclusions." Phoenix Savs. & Loan, Inc. v. Aetna Cas. & Sur. Co., 381 F.2d 245, 249 (4th Cir. 1967); see also id. at 253 (noting that "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge").

### III. Discussion

**A. Count I – Discrimination Based on Religion and National Origin**

In Count I of the Plaintiff's complaint, he alleges disparate treatment because his religion and the race and religion of his wife were different from that of the federal employee managers at the CBP who presided over his termination. The Plaintiff alleges that "without cause and without them conducting an investigation, they acted on false allegations made against the [P]laintiff by a fellow guard who in the words of the deciding CBP managers involved glowingly described as a[n] 'ordained Southern Baptist Minister.'" ECF No. 1 at 2.

5

### 1. Applicable Law for Discrimination Claim

Pursuant to Title VII, the discharge of any individual based upon the individual's religion or national origin is an unlawful employment practice. 42 U.S.C. § 2000e-2(b). Under a disparate treatment theory of religious discrimination, "an employee must demonstrate that the employer treated [him] differently than other employees because of [his] religious beliefs." Chalmers v. Tulon Co. of Richmond, 101 F.3d 1012, 1017 (4th Cir. 1996). "The plaintiff can meet his burden at the summary judgment stage by proving his job performance was satisfactory and by either providing direct or indirect evidence of discrimination or by using 'a burden-shifting scheme similar to the one the Supreme Court articulated in McDonnell Douglas Corp. v. Green . . . to develop an inferential case.'" Rayyan v. Virginia Dep't of Transportation, 719 F. App'x 198, 205 (4th Cir. 2018).

A plaintiff can establish a prima facie showing of discrimination by demonstrating: "(1) he was a member of a protected class; (2) he was satisfactorily performing his job at the time of the termination; (3) he was terminated from his employment; and (4) the prohibited conduct in which he engaged was comparable in seriousness to misconduct of other employees outside the protected class who received less severe discipline." Haynes v. Waste Connections, Inc., 922 F.3d 219, 223 (4th Cir. 2019). If the plaintiff establishes a prima facie showing, "the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for its actions towards the employee." Chalmers, 101 F.3d at 1017-18. If the employer meets this burden, the "employee is then required to show that the employer's proffered reason is pretextual, and that the employer's conduct toward [him] was actually motivated by illegal considerations. At all times, the

ultimate burden of persuasion lies with the employee." Id. at 18.

## 2. Analysis

The Plaintiff has not provided direct evidence of discrimination. Therefore, he must make a prima facie showing of discrimination. The Defendant does not dispute that the Plaintiff, as an individual alleging discrimination on the basis of his faith, is a member of a protected class. Also, the Defendant does not dispute that the Plaintiff was was removed from the ATC contract, which ultimately resulted in the termination or resignation of his employment with SAFE. However, the Defendant argues the Plaintiff cannot prove his job performance was satisfactory and the Plaintiff has not presented evidence that other employees, who were not members of his protected class, were retained under similar circumstances.

### a. Satisfactory Job Performance

The Defendant argues that the Plaintiff cannot prove his job performance was satisfactory. In support, the Defendant alleges that in November 2013 Sergeant Shawyer verbally counseled the Plaintiff for his unprofessional behavior. According to Sergeant Shawyer, the Plaintiff's concerning himself with his co-workers' job performance resulted in the Plaintiff's neglect of his own job responsibilities. Sergeant Shawyer's memorandum of the counseling noted the Plaintiff needed to "understand that the position of Senior Officer on the weekend is NOT a supervisor position therefore he needs to stop trying to act like a supervisor on weekends." ECF No. 104-2 at 51-52.

The Defendant alleges that the Plaintiff also engaged in unprofessional behavior in August 2013 when he involved himself in Voorhes' job performance.

Sergeant Shawyer's report omitted the date of the counseling. See ECF No. 104-2 at 51. In an email to Young, Captain Wilt stated that he witnessed the conversation in 2013. ECF No. 104-2 at 52. The Plaintiff argues that Sergeant Shawyer's report was fabricated after he was terminated. He alleges that he never received any warnings, counselings, reprimands or write-ups of any kind and that no such documentation existed in his personnel file prior to his termination. The Plaintiff also disputes the allegations in Voorhees' letter.

The Plaintiff argues that he was more than qualified for the armed security guard position because he was a retired Federal Law Enforcement Officer of 25 years who was previously employed as a Special Agent Security Officer with the U.S. Department of State's Bureau of Diplomatic Security Service. Additionally, he asserts that prior to his termination, he successfully completed the Department of Homeland Security Federal Protection Service's 40-hour security guard training course and he had previously served successfully as an armed security guard under a FPS contract at the Federal Bureau of Investigation's Records Center in Stephens City, VA. The Plaintiff further argues that during his time as a full-time guard at the CBP ATC, his "performance, punctuality and reliability were exemplary and were such that he held the part-time position at CBP ATC of sergeant shift supervisor on a regular basis." ECF No. 1 at 4-5. Finally, the Plaintiff avers that he was never written-up for poor performance, lateness or any other issue.

Based on the contention of the parties regarding when Sergeant Shawyer's report was prepared and the accuracy of the allegations by Voorhees, there is a question of fact as to if the Plaintiff performed his job satisfactorily.

### b. Direct Comparator

The Defendant argues that the Plaintiff has not presented any evidence of other employees of a different religion or with no religion who engaged in similar conduct and were treated differently than the Plaintiff.

"[T]o establish a valid comparator, the plaintiff must produce evidence that the plaintiff and comparator 'dealt with the same supervisor, [were] subject to the same standards and . . . engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.'" Haynes, 922 F.3d at 224 (internal citations omitted).

The Plaintiff alleges that the "actions of the CBP managers in terminating him without any graduated discipline violated both Federal Contracting Regulations and the terms of the CBP ATC's security contract with the contract company." ECF No. 1 at 5. The Plaintiff refers to Young's description of SAFE Security's policy for handling complaints against employees. Young stated:

> As the contract manager the discipline approach always depends on the nature of the incident. If a verbal warning was given and the person whom the complaint was made against or the incident was with always received an opportunity to tell their side of the story. The next level was a write up with possible suspension up to three days or termination depending upon the nature and severity of the incident. Then, if another incident happened another write up would be given with a possible 5 day suspension or possible termination depending on the nature and severity of the event. Lastly, if another incident were to happen depending on the nature or severity of the incident it would lead to termination . . . ."

ECF No. 126-10 at 5. However, Young did recommend the Plaintiff receive a one-day suspension and a verbal warning. COTR Ausherman and CO Travis, who are CBP

9

employees, made the decision to remove the Plaintiff from the contract.

COTR Ausherman avers that under "the CBP-SAFE service contract, CBP personnel had no authority to discipline, reprimand, warn or counsel [the Plaintiff]. In deciding to alert [CO] Travis to Officer Voorhees' 'hostile work environment claim' against [the Plaintiff], [COTR Ausherman] considered that only CBP policy obligates [him] to take immediate and appropriate action once [he has] been made aware of an allegation of discrimination." ECF No. 104-2 at 13. COTR Ausherman avers that he had never received complaints of harassment against other contract employees. ECF No. 104-2 at 14. He believed he was acting in accordance with company policy by notifying SAFE to remove the Plaintiff from the contract. ECF No. 126-4.

Young was asked to define "SAFE's policy or practice with regard to terminating an employee's employment when the Contractor no longer wants them assigned to their contract?" ECF No. 126-10 at 5. She responded, "SAFE does not have a specific policy; each company that makes up SAFE has its own policy. Swanson Services policy is depending on the nature of why the employee has to be terminated from the contract if he/she is terminated from the company as well." Id.

The Plaintiff's claim that he did not receive graduated discipline prior to his termination does not provide evidence that the prohibited conduct in which he engaged was comparable in seriousness to misconduct of other employees outside the protected class who received less severe discipline.

The Plaintiff also attempts to use Voorhees as a direct comparator, alleging that Voorhees had been afforded graduated discipline in the form of multiple formal written

warnings in accordance with SAFE Security company's personnel policies. However, the Plaintiff does not allege that Voorhees was ever engaged in or reported for the same conduct, specifically creating a "hostile work environment."

The Plaintiff references an email written by COTR Ausherman to argue that he was treated differently based on his religion. In the email, COTR Ausherman states,

> Officer Voorhees has worked for the CBP at the ATC for almost six years, he is also an ordained Southern Baptist Minister. Officer Voorhees will be traveling to North Carolina to start his own church in the near future. Officer Voorhees maintains a professional and courteous relationship with all staff here at the Advanced Training Center.

ECF No. 126-3 at 1. However, the Plaintiff fails to acknowledge the context in which the email was written. The email is the same email discussing the Plaintiff's derogatory remarks to Voorhees about his religion. Therefore, the reference to Voorhees' religion and his future plans does not create an inference that the Plaintiff was being terminated based on his religion.

The Plaintiff fails to present any evidence that the prohibited conduct in which he engaged was comparable in seriousness to misconduct of other employees outside the protected class who received less severe discipline. Accordingly, he has not shown a prima facie case of discrimination.

### c. Cat's Paw Liability

The Plaintiff is also unable to prevail under a cat's paw liability theory of discrimination. Under cat's paw liability, if an unbiased decision-maker relies on evidence from a biased supervisor, the employer is liable unless the decision-maker has

determined that the action was justified apart from the biased recommendation. Staub v. Proctor Hospital, 562 U.S. 411 (2011).

The Plaintiff argues that Voorhees' letter was relied on to make the decision to terminate him and Voorhees' accusations against him in the letter are false. However, COTR Ausherman and CO Travis relied on more than just Voorhees' letter. The officers also relied on Medich's statement.

The Plaintiff produced a typed letter which he alleges Medich provided him. ECF No. 126-20. In the signed and dated letter, Medich said that his statement was not voluntary. Id. However, as the Government argues, Medich's letter fails to meet Federal Rule of Civil Procedure 56(c) and 28 U.S.C. § 1746. In deciding a motion for summary judgment, a Court can rely on a written, unsworn declaration if it complies with 28 U.S.C. § 1746. The letter provided by the Plaintiff does not make a declaration under penalty of perjury as required by the statute. The Plaintiff does not set forth any additional evidence to argue that the CBP officers' decision to remove him from the contract relied on evidence from a biased supervisor, and was otherwise unjustified.

### 3. Conclusion

The Plaintiff has not met his burden of showing a prima facie case of discrimination based on his religion. For the same reasons the Plaintiff's religious discrimination claim fails, his discrimination claim based on his wife's religion and national origin also fails.

### B. Count II and III – First Amendment Claims

In Count II and III of his complaint, the Plaintiff alleges claims under the Free Exercise Clause and Establishment Clause of the First Amendment. Specifically, in

Count II, the Plaintiff alleges the Defendant's punishment of him for not conforming to an accepted or predominant standard of religious belief and practice, violated the Free Exercise Clause of the U.S. Constitution. ECF No. 1 at 17. The Plaintiff further alleges that

> [b]y demanding the termination of the plaintiff's employment and subjecting the plaintiff to overt disparate treatment due solely to an unsubstantiated allegation made by a single person that the government manager involve glowingly described as an "ordained Southern Baptist Minister" due to the plaintiff being a Catholic and married to an Asian Buddhist, the defendant violated the Free Exercise Clause of the U.S. Constitution.

Id.

In Count III, the Plaintiff alleges that

> [b]y failing to remain neutral, but instead adopting the religious perspective of a particular person who claimed the plaintiff had somehow offended his religious feelings of what the government manager in this case described as an 'ordained Southern Baptist Minister' then acting on that perception to the detriment of the plaintiff, the defendant engaged in the 'de fact' establishment of the sole accuser's beliefs.

Id. at 18. The Plaintiff further alleges that by citing

> in great detail the claimed religious credentials of the plaintiff's sole accuser, Voo[r]hees, in an email demanding the plaintiff's summary termination while not conducting an investigation or allowing the plaintiff to defend himself or even know there was any kind of accusation made against him or to accorded him the customary graduated disciplinary process afforded others outside the plaintiff's protected class the defendant engaged in the establishment of religion.

Id.

The Defendants argue that the Plaintiff's First Amendment claims must be dismissed because such claims cannot be brought against a federal government agency.

### 1. Applicable Law

The Plaintiff brings his First Amendment Claims under 42 U.S.C. § 1983. However, the Plaintiff's claims are properly considered under <u>Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971), not under 42 U.S.C. § 1983. Section 1983 claims "only appl[y] to persons acting under color of State Law."[4] <u>Lugar v. Edmondson Oil Co.</u>, 547 U.S. 922, 931 (1982). In <u>Bivens</u>, the United States Supreme Court established a counterpart to § 1983 claims by recognizing an "implied private action for damages against federal officers alleged to have violated a citizen's constitutional rights. <u>Corr. Servs. Corp. v. Malesko</u>, 534 U.S. 61, 66 (2001). Thereafter, in <u>F.D.I.C. v. Meyer</u>, 510 U.S. at 484-86, the Supreme Court declined an invitation to extend <u>Bivens</u> to permit suit against a federal agency, stating that "[i]t must be remembered that the purpose of <u>Bivens</u> is to deter *the officer*." 510 U.S. 471, 475, 485 (1994).

### 2. Analysis

The Plaintiff brought his complaint against the Secretary, U.S. Department of Homeland Security, Customs and Border Protection. He did not bring claims against an individual, such as an employee of the agency. Because there are no individual defendants named and no agency has waived sovereign immunity, Count II and III of the Plaintiff's complaint fail and must be dismissed.

---

[4] Even if the Plaintiff's claims could constitute action under color of State Law, such a suit must involve claims brought against individual federal government officers, not against an agency. <u>Kletschka v. Driver</u>, 411 F.2d 436, 448-49 (2d Cir. 1969). The federal agency itself is immune from suit. <u>See, e.g.</u>, <u>Settles v. U.S. Parole Comm'n</u>, 429 F.3d 1098, 1105-07 (D.C. Cir. 2005) (holding that a federal agency is not a "person" subject to § 1983 liability).

### C. Count IV – Constructive Discharge Claim

Finally, while not explicitly set forth in the Plaintiff's complaint, he appears to assert a claim of constructive discharge. In his complaint, the Plaintiff states that his "termination was purely a constructive discharge. At the time of [his] termination he was threatened that if he did not submit a resignation he would endanger his security clearance and never again be allowed to work on a federal contract." ECF No. 1 at 6.

#### 1. Applicable Law

Constructive discharge has been described as "working conditions that become so intolerable that a reasonable person in the employee's position would have felt compelled to resign. Pennsylvania State Police v. Suders, 542 U.S. 129, 141 (2004). To establish a constructive discharge claim in the Fourth Circuit, a plaintiff must "show that his employer deliberately made his working conditions so objectively intolerable as to force him to quit. Jolly v. University of North Carolina at Wilmington, 831 F. Supp. 2d 916, 920 (E.D.N.C. 2011).

#### 2. Analysis

The Plaintiff has not set forth allegations rising to the level of constructive discharge because he does not allege he was subjected to intolerable conditions prior to his termination. He does allege in his complaint that the Defendant's discriminatory conduct has caused him "to suffer a loss of pay, benefits, financial distress, damage to his credit rating, adverse affects to his health, damage to his government security clearance and damage to his personal and professional reputation." ECF No. 1 at 16. Each of these allegations refer to conditions after his resignation or termination from the

contract. The only intolerable working conditions prior to the Plaintiff's resignation or termination from the contract is that he alleges he was told if he did not resign he would risk losing his security clearance. However, the Plaintiff had the option to resign to preserve his security clearance or be terminated from the contract. His option to submit a letter of resignation does not rise to the level of constructive discharge.

## IV. Conclusion

For the aforementioned reasons, the Court **ORDERS** that the Defendant's Motion for Summary Judgment [ECF No. 104] is **GRANTED**. The Court further **ORDERS** that the parties' pending motions [ECF Nos. 77, 78, 79, 148, 152, 154, 155 and 160] are hereby **TERMINATED AS MOOT**.

The Clerk of Court is **DIRECTED** to enter a separate judgment in favor of the Defendants pursuant to Rule 58 of the Federal Rules of Civil Procedure. The Clerk is further **DIRECTED** that this case shall be **DISMISSED WITH PREJUDICE** and **STRICKEN** from the Court's active docket.

The Clerk is **DIRECTED** to transmit copies of this Order to all counsel of record herein.

**DATED:** July 11, 2019

*/s/ Gina M. Groh*
GINA M. GROH
CHIEF UNITED STATES DISTRICT JUDGE